IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNIVERSAL INSURANCE COMPANY, INC.

    Plaintiff,

    v.

WARRANTECH CONSUMER PRODUCT SERVICES, INC., et al.

    Defendants.

**Civil No. 11-1613 (SEC)**

**OPINION AND ORDER**

Before this Court are plaintiff Universal Insurance Company's ("Universal") motion to remand and for abstention (Docket # 7), together with Warrantech Consumer Product Services, Warrantech International, and Warrantech Corporation's (collectively "Warrantech") opposition thereto (Docket # 19). After reviewing the filings and the applicable law, Universal's motion is **DENIED**.

**Factual and Procedural Background**

On June 1, 2011, Universal filed suit against Warrantech in the Court of First Instance of the Commonwealth of Puerto Rico, requesting the revocation or modification of an arbitration award (the "Award") rendered by an arbitration panel (the "Panel"). Docket # 1-2, Exh. B. Universal predicates its claims upon the Puerto Rico Arbitration Act, P.R. Laws Ann. tit. 32, § 3201 et seq. In essence, it alleges that the Panel improperly rendered the Award as it failed to follow the customs and usage of the insurance industry. See generally Docket # 1-2, Exh. B.

A succinct introduction to the facts of this case suffices to set the stage for the analysis. Sometime in 1998, Universal, a Puerto Rican insurance company, decided to explore the "mechanical breakdown" coverage insurance side of the business. Id., pp. 3-4. As a result,

Universal signed a contract with Warrantech, a Texas-based company that purportedly had ample experience in handling this type of insurance. Id. As part of their agreement, Universal retained Warrantech as an administrator to manage its newly-created mechanical breakdown policies program. Id., ¶ 15. Unfortunately, at some point, things unraveled; Universal and Warrantech's commercial relationship deteriorated to the point that they found themselves paired against each other, partaking in an arbitration process regarding, inter alia, Warrantech's allegedly subpar performance under the contract. Id., ¶ 51. According to the complaint, the Panel concluded, among other things, that Universal had paid Warrantech for services that the latter never rendered. Id., ¶¶ 67-68. Upon finding that the contract's termination came by mutual agreement (and thus that Warrantech had not breached the contract, as alleged by Universal), the Panel declared the termination of the contract pursuant to certain provisions of the Civil Code of Puerto Rico. Id.

Ultimately, in March 2011, the Panel rendered the Award Universal impugns. Id., ¶ 64. Clearly dissatisfied with the Award, Universal argues that the Panel erred as it failed to properly calculate the amount for services prepaid and not rendered, which, according to Universal, totals $2,082,742 after "[a]pplying the customs and usage established." Id., pp. 29 & 32.

On June 27, 2011, Warrantech filed a timely Notice of Removal (Docket # 2) before this Court because of the diverse citizenship of the parties and the existence of a controversy in the requisite amount. See 28 U.S.C. § 1332(a). A month later, Universal filed the instant motion to remand to state court and for abstention. Docket # 7. In it, Universal posits that while this Court's jurisdiction is proper, it nevertheless should relinquish it pursuant to the abstention principles enunciated in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1423. Id. at 3. According to Universal, Burford mandates this Court's abstention because this case

**Civil No. 11-1613 (SEC)**  Page 3

presents difficult questions regarding Puerto Rico insurance law as well as important issues of public policy. Id., pp. 5 & 15.

Warrantech contends otherwise. It first asserts that, because issues of federal law abound in this case—namely, the applicability of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.—the Burford doctrine outright precludes this Court's abstention. Docket # 19, p. 6.[1] In the alternative, it posits that even if the FAA were not to preempt the Puerto Rico Arbitration Act, the Burford abstention doctrine would still be inapplicable here. Id., pp. 7-11.

**Standard of Review**

It goes without saying that "federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" Chico Service Station, Inc. v. Sol Puerto Rico Ltd.,633 F.3d 20, 29 (1st Cir. 2011) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)) (quoting in turn Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)); see also Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821) ("[Courts] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution"). This bedrock principle is predicated upon "the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." Id. (quoting New Orleans Pub.

---

[1] Although Warrantech removed this case on grounds of diversity of citizenship, it now invites this Court not only to deem the FAA applicable, but also to conclude that it preempts state law; the latter is not as clear-cut. At this juncture, however, the Court declines this premature invitation. This is issue is "[f]ully discussed," id. at n. 2, in Warrantech's motion to dismiss (Docket # 10), which was held in abeyance (Docket # 16) until after resolving the present motion to remand. This Court will tackle this issue in due course, with the benefit of a response from Universal on this front. Accordingly, the Court will address Universal's abstention argument on the merits.

**Civil No. 11-1613 (SEC)**                                                                 Page 4

Serv., Inc. v. Council of New Orleans (NOPSI), 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

As an exception to this general principle, the Supreme Court "[h]as carved out a discrete set of 'exceptional circumstances' in which the exercise of jurisdiction may be declined." Id. Generally, these "'exceptional circumstances' apply 'where denying a federal forum would clearly serve an important countervailing interest,' such as 'regard for federal-state relations' or 'wise judicial administration.'" Id. (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). With respect to the Burford doctrine, the First Circuit has reiterated the accepted proposition that "[t]he circumstances that fit th[e] [Burford] mold are rare." Id. Seeing that "[a]bstention runs so firmly against the jurisprudential grain, . . . [it] must always be 'the exception, not the rule.'" Id. (quoting Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993)); see also Joubert-Vazquez v. Alvarez-Rubio, --- F.Supp.2d ----, 2011 WL 3268573, at *4 (D.P.R. Aug. 1, 2011).

It is common ground that the Supreme Court's concern in Burford was "[t]o prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." Id. (quoting Pub. Serv. Co. of N.H. v. Patch, 167 F.3d 15, 24 (1st Cir. 1998)) (some citations and internal quotation marks omitted). As a corollary of this policy-oriented principle, the Burford Court crafted a two-pronged framework to pinpoint situations that involve this concern:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; *or* (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

Id. (emphasis added) (citations and internal quotation marks omitted). In interpreting the scope of Burford, the courts have "[d]eclined to give it . . . a broad reading." Id. at 30 (citing Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 473 (1st Cir. 2009)). Primarily because there is a strong presumption in favor of a federal court's exercise of its jurisdiction, binding case law dictates that "[a]bstention must only apply in 'unusual circumstances,' when federal review risks having the district court become the 'regulatory decision-making center.'" Id. (citation omitted); see also Bath Mem'l Hosp. v. Me. Health Care Fin. Comm'n, 853 F.2d 1007, 1014–15 (1st Cir. 1988) (observing that Burford abstention is narrowly tailored to "[s]ituations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate").

However, "[t]he Burford doctrine does not require abstention merely because the federal action may impair operation of a state administrative scheme or overturn state policy." Chico Service Station, Inc., 633 F.3d at 30 (citations omitted). This doctrine "[i]s primarily targeted toward the narrow class of cases seeking individualized review of agency-specific regulatory determinations, where federal intervention would threaten uniformity, and thereby, the state's effort to establish a coherent regulatory policy." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 525 n. 19 (1st Cir. 2009). Lastly, "[B]urford abstention does not apply . . . when the effect of an entire state regulatory scheme is challenged as unconstitutional." Tenoco Oil Co. v. Dep't. of Consumer Affairs, 876 F.2d 1013, 1028 (1st Cir. 1989)

**Applicable Law and Analysis**

As previously noted, Universal contends that because the present instance satisfies the requirements of the Burford doctrine, the Court "[s]hould abstain from exercising jurisdiction

**Civil No. 11-1613 (SEC)**                                                                                 **Page 6**

over this matter." Docket # 7, p. 5. Against this backdrop, the Court will analyze the two scenarios under which the Burford doctrine is forthcoming.

*Whether there are difficult questions of state law bearing on policy problems of substantial public import*

The heart of Universal's case for abstention rests on the first Burford prong—the existence of difficult questions of state law. Universal alleges that the following issues are difficult: (1) whether a panel of arbitrators can disregard the rules provided by the parties, i.e., a stipulation that an award be rendered with regard to "customs and usage" of the insurance industry; and (2) whether a contractual clause requiring the panel to render an award in conformity with the "custom and usage" equates to rendering it in accordance with the law. Docket # 7, pp. 5 & 12. Put another way, Universal questions whether the arbitrators have to strictly follow the rules provided by the parties, or whether they are free to disregard them. And whether contravening these rules runs afoul of the substantive law. In so doing, Universal contends that this Court will have to embark on "[a]n analysis of the history of customs and usage in the Civil Code and how that custom and usage may have developed into legal principles that have the force of law." Id., p. 13. It alleges that the Panel, in rendering the Award, disregarded the rules by ignoring the "customs and usage." Id., pp. 12-13.

Upon consideration, the Court is unpersuaded by Universal's argument because the issues presented here entail no cumbersome exercise. As Warrantech succinctly puts it, the legal issue involved here "[d]oes not present a credible obstacle to this Court's exercise of jurisdiction." Docket # 19, p. 10. The essence of this case, the adjudication of controversies involving review of arbitration awards, poses no particular difficulty to the Court. Making determinations with respect to local law, particularly in connection with Civil Code precepts, is a sine qua non function of federal courts in this District. See e.g., Huongsten Production

Civil No. 11-1613 (SEC)                                                                                                                         Page 7

Import & Export Co. Ltd. v. Sanco Metals LLC., --- F.Supp.2d ----, 2011 WL 4018269, at *6 (D.P.R. Sept. 12, 2011) (noting that Puerto Rican federal courts sitting in diversity jurisdiction, "[e]schew[] common law principles of contract interpretation in favor of . . . [the] civil code derived from Spanish law") (quoting Borschow Hosp. and Medical Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir.1996)).

Moreover, that the issue presented here is allegedly one of first impression, in and of itself, falls short of defeating the presumption of exercise of jurisdiction. Indeed, federal courts, whenever feasible, must interpret less than pellucid state law in accordance with the principles espoused by the state's highest court. Carr v. Puerto Rico Ports Authority, --- F.Supp.2d ----, 2011 WL 3648266, at *4 (D.P.R. Aug. 18, 2011) ("More than seventy years ago, the . . . Supreme Court settled the question of what law federal courts are to apply when exercising diversity of citizenship jurisdiction. The principle that state-law governs substantive issues in diversity cases has been in place ever since").

Here, supposing that the Puerto Rico Arbitration Act—and not the FAA—eventually controlled, a federal court, in interpreting whether the Panel disregarded the "customs and usage" of the insurance industry, would be on equal footing with the Court of First Instance of the Commonwealth of Puerto Rico. Cf. Zablocki v. Redhail, 434 U.S. 374, 380, n. 5, 98 S.Ct. 673, 678, n. 5, 54 L.Ed.2d 618 (1978) (finding that ("[t]here is ... no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy"). Besides, if need be, this Court could always certify this question to the Puerto Rico Supreme Court. E.g., Stone v. Wall, 135 F.3d 1438, 1441-43 (11th Cir.1998) (finding abstention inappropriate but certifying to the Florida Supreme Court the question whether there existed an action for interference with the parent-child relationship).

Even assuming, arguendo, that these issues entail difficult questions of state law, Universal has failed to explain how their adjudication would disturb Puerto Rico's public policy favoring arbitration. Although Warrantech fails to address this altogether, deciding whether the grounds Universal raises authorize judicial review of the Award is distinguishable from <u>Dunn v. Cometa</u>, 238 F.3d 38, 42 (1st Cir. 2001), a case heavily relied upon by Universal. In <u>Dunn</u>, "the claims [were] based upon conduct in a family context," a traditional state province. <u>Id.</u> at 43. Ultimately, the court held that the Burford abstention doctrine applied because [c]onstructing a proper legal framework . . . amounts to regulati[ng] the marriage itself, a traditional state enterprise." <u>Id.</u> at 42. But arbitration is far from being an exclusive area of state regulation. Hence, Universal misplaces its reliance on <u>Dunn</u>. Contrary to Universal's assertions, moreover, federal regulation with respect to arbitration is irrefragably pervasive. <u>See</u> generally <u>AT & T Mobility LLC v. Concepcion</u>, 563 U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (describing the FAA "[a]s 'embod[ying] [a] national policy favoring arbitration,' and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary'") (citations omitted; some alterations in original). It is thus unsurprising that Warrantech so vigorously contends that the FAA controls the present instance.

In short, this case "[f]rames no 'difficult question[ ] of state law' bearing on significant public policy as would prompt abstention." <u>Fragoso</u>, 991 F.2d at 883 (quoting <u>NOPSI</u>, 491 U.S. at 361, 109 S.Ct. 2506).

*Whether federal review would be disruptive of state efforts to establish a coherent policy regarding a matter of substantial public concern.*

As a last ditch attempt, Universals posits, without much in the way of analysis, that Puerto Rico subjects issues pertaining to the insurance industry to a high degree of state regulation, evincing a state administrative scheme that would be disturbed by this Court's

**Civil No. 11-1613 (SEC)**                                                                 Page 9

intervention. Docket # 7, p. 6. Universal, however, fails to properly substantiate this argument. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived"). Conversely, Warrantech correctly alleges that this Court's review of the Award in no way would disrupt the state regulation of the insurance business because the issue relates to [t]he grounds upon which *any* arbitration award my be reviewed." Id., p. 11. More fundamentally, Warrantech contends, Universal has failed to properly show the existence of an administrative procedure. Id., p. 12.

Universal also misses the mark in connection with the second Burford prong. First, because no state administrative scheme exists here, Burford is simply unsuitable. Appalachian Regional Healthcare, Inc. v. Beyt, Rish, Robbins Group, Architects, 963 F.2d 373, at *3 (6th Cir. 1992) (Table) (text in Westlaw) ("Since there is no state administrative agency involved in this dispute, Burford abstention is not applicable"). Indeed, the First Circuit has explained that Burford is usually implicated only "when the federal courts are asked to interfere with state processes by reviewing the proceedings or orders of state administrative agencies." Guillemard-Ginorio, 585 F.3d at 525 (citation and internal quotation marks omitted); see also Erwin Chemerinsky, Federal Jurisdiction §12.2, p. 805 (5th ed. 2007) (noting that Burford abstention "[r]equires that the administrative system have a primary purpose of achieving uniformity within a state and that there be the danger that judicial review would disrupt the proceedings and undermine the desired uniformity"). To that effect, the Supreme Court abstained in Burford when asked to second-guess a state railroad commission's order allocating oil drilling rights. Burford, 319 U.S. at 334, 63 S. Ct 1107. None of these concerns, however, exist in the instant case.

**Civil No. 11-1613 (SEC)**                                                                 Page 10

Second, Universal does not, for it cannot, request this Court's "[r]eview [of] the actions or decisions of any state body, be it judicial or administrative." Fragoso, 991 F.2d at 883. Rather, Universal merely asks this Court to perform a well-established judicial function: to review an arbitration award under applicable federal and state law, e.g., P.R. Laws Ann. tit. 32, § 3222 (authorizing courts to reverse an award in certain circumstances); 9 U.S.C. § 10(a)(4) (authorizing courts to "make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers"). Universal, therefore, fails to explain how this Court's involvement would reverberate negatively upon an action or decision by a state judicial or administrative body. And, as noted above, no administrative scheme is in place here.

The foregoing suffices to conclude that this Court's involvement cannot plausibly disrupt Puerto Rico's authority to establish a coherent insurance scheme. Consequently, since Universal's proffer bears no similitude to the axiom set forth in Burford, its request for abstention likewise fails under this prong.

**Conclusion**

Because exercising federal review in this case neither requires resolving difficult questions of state law nor obstructs Puerto Rico's capacity to establish a coherent insurance scheme, Burford abstention is unwarranted. For the reasons articulated above, Universal's motion to remand is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of November, 2011.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge