**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNIVERSAL INSURANCE COMPANY,
INC.

     Plaintiff,

       v.

WARRANTECH CONSUMER
PRODUCT SERVICES, INC., et al.

     Defendants.

**Civil No. 11-1613 (SEC)**

**OPINION AND ORDER**

Before the Court are defendants Warrantech Consumer Product Services, Warrantech International, and Warrantech Corporation's (collectively, "Warrantech") motion to dismiss (Docket # 10), plaintiff Universal Insurance Company's ("Universal") opposition thereto (Docket # 25), and Warrantech's reply (Docket # 18). Warrantech also filed an unopposed motion to confirm the arbitration award (Docket # 29). After reviewing the filings and the applicable law, Warrantech's motions are **GRANTED**.

**Factual and Procedural Background**

This diversity commercial dispute arose after Universal filed suit against Warrantech in the Court of First Instance of the Commonwealth of Puerto Rico, requesting the revocation or modification of an arbitration award (the "Award"). Docket # 1-2.[1] Specifically, Universal

---

[1] On June 27, 2011, Warrantech filed a timely Notice of Removal (Docket # 2) before this court because of the diverse citizenship of the parties and the existence of a controversy in the requisite amount. See 28 U.S.C. § 1332(a). Universal then filed a motion to remand to state court and for abstention (Docket # 7), pursuant to the abstention principles enunciated in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed (1943). In declining to relinquish its jurisdiction, this court held that Burford abstention was unwarranted "[b]ecause exercising federal review in this case neither require[d] resolving difficult questions of state law nor obstruct[ed] Puerto Rico's capacity to establish a coherent insurance scheme . . . ." Universal Ins. Co., Inc. v. Warrantech Consumer Product Services, Inc., No. 11-1613, --- F.Supp.2d ----, 2011 WL 5865337, at *6 (D.P.R. Nov. 23, 2011).

grounds its claims on the Puerto Rico Arbitration Act ("PRAA"), P.R. Laws Ann. tit. 32, § 3201 et seq., and alleges in essence, that the arbitration panel (the "Panel") improperly rendered the Award.

Because the Court is ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will relate Universal's well-pleaded facts as alleged in its complaint. Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 529 (1st Cir. 2011) (citation omitted), supplementing them with references to documents annexed to the complaint or fairly incorporated into it. Rederford v. U.S. Airways, Inc., 589 F.3d 30, 34 (1st Cir. 2009) Accordingly, the facts are as follows.

At some point between 1997 and 1998, Universal, a Puerto Rico insurance company, decided to explore the "mechanical breakdown" coverage insurance side of the business. Docket # 1-2, ¶¶ 6 & 9.[2] To do so, it signed an Administrative Agreement and a Fee Agreement (collectively, the "Contracts") with Warrantech, a Texas-based company with purported experience in handling this type of insurance. Id., ¶¶ 12-14. In pertinent part, the Contracts contained the following arbitration clause:

> The [Panel] shall make an award with regard to the custom and usage of the insurance and reinsurance business. The [Panel] shall issue its award in writing based upon a hearing at which evidence may be introduced without following strict rules but in which cross-examination and rebuttal shall be allowed. The [Panel] shall make its award within sixty (60) days following the termination of the hearing unless the parties consent to an extension. A decision by the majority of the members of he board shall become binding upon parties to the proceedings.

Id., ¶ 18. As to the Panel's composition, Universal and Warrantech agreed that each would chose one arbitrator; the third "neutral" member of the Panel was in turn selected by the other

---

[2] Mechanical breakdown policies, Universal explains in its complaint, are insurance polices that cover the cost of repairs to vehicles upon the expiration of their original warranty. Id.

two arbitrators. Id. The parties agreed that Puerto Rico's substantive law would govern the arbitration process. Id., ¶ 19.

Unfortunately, Universal and Warrantech's commercial relationship deteriorated to the point that the former unilaterally terminated their contractual relationship on October 16, 2003. Id., ¶ 49. Because Universal had prepaid Warrantech for services that the latter would not render, Universal contended, Warrantech should return such amounts. Warrantech refused. Id., ¶ 50. Thus, on December 15, 2008, Universal demanded arbitration, requesting the reimbursement for the prepaid services and alleging damages to its commercial reputation due to Warrantech's subpar contractual performance. Id., ¶ 51; Docket # 1-1, pp. 91- 99.

Warrantech answered, counterclaimed, and also filed an independent complaint for arbitration against Universal. Id., ¶¶ 53-54; Docket # 1-1, pp. 100-116. Thereafter, the parties agreed to arbitrate before the Panel pursuant to the rules of the American Arbitration Association. Id., ¶ 55. After Universal amended its allegations, comprehensive discovery, including depositions, ensued. Id. The arbitration hearing commenced on March 18, 2010, and, after both sides presented extensive testimonial and documentary evidence, concluded eleven days later. Id., ¶ 57.

In an unanimous decision, the Panel determined, among other things, that Universal had paid Warrantech for services that the latter never rendered. Id., ¶¶ 64-68. It also found that the Contract's termination came by mutual agreement (and thus that Warrantech had not breached the contract, as alleged by Universal), and terminated the Contracts pursuant to certain provisions of the Civil Code of Puerto Rico. Id. The Panel tallied the breakdown of the Award as follows:

> The total award to Universal is the amount of $831,115. The total award to Warrantech is the amount of $816,888. Warrantech is hereby ordered to pay Universal the difference in the amount of $14,227, plus post-award interest at the rate of six percent per annum from the date of the award until full

> payment thereof. No pre-award interest is granted. Each party is responsible for its costs and attorney's fees. Neither party shall be entitled to recover from the other the fees paid to the arbitrators.

Docket # 1-2, p. 58.

Undeterred, Universal moved the panel to reconsider the Award (Docket # 10-1, pp 1-13), "[a]sking for . . . a recomputation of the factors used to arrive at the figure awarded to Universal based on actual, objective data that existed and was presented to the Panel at that time . . . ." Docket # 10-3, p. 2. The Panel nevertheless denied the motion. Docket # 10-4.

Still dissatisfied with the Award, Universal filed suit in state court, advancing three causes of action. The first one, predicated upon one of the grounds provided by the PRAA (see P.R. Laws Ann. tit. 32, § 3222 (c)), requests the Award's invalidation. Docket # 1-2, p. 26. The second and third, attempt to modify the Award (pursuant to P.R. Laws Ann. tit. 32, § 3223(a)), based on an alleged computational error. According to Universal, the proper calculation of the Award yielded $2,082,742 after "[a]pplying the customs and usage established." Docket # 1-2, p. 32.

Against this backdrop, Warrantech moves for dismissal, alleging that Universal's allegations fail to state a plausible entitlement to relief "under the very narrow grounds provided" by the Federal Arbitration Act ("FAA"). Docket # 10, p. 2. Warrantech vigorously contends that the FAA controls here insofar as it preempts contrary state law. Alternatively, Warrantech posits that Universal's contentions fail to pass muster even under the grounds provided by the PRAA. Universal opposes, arguing that (1) the FAA is inapplicable here; (2) the FAA does not preempt the PRAA; and (3) the allegations in its complaint survive dismissal. Docket # 25, pp. 2-12. The Court addresses each of the parties' contentions in turn.[3]

---

[3] Universal also contends—albeit in a cursory manner and with no supporting citations—that granting Warrantech's motion to dismiss would violate its due process rights. Id., p. 16. But "[i]ssues

### Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)).Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citation omitted).

In Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Id.

---

that are averted to in a perfunctory manner absent developed argumentation are waived." U.S. v. Brown, 669 F.3d 10, 16 n. 5 (1st Cir. 2012) (citations omitted); see also D.P.R. Civ. R. 7(a).

Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

**Applicable Law and Analysis**

*FAA applicability*

As previously indicated, Warrantech maintains that the FAA (1) governs here *and* (2) preempts state law. Universal disagrees, contending that the PRAA controls this case. As a threshold matter, FAA applicability boils down to whether the parties' agreement to arbitrate, "evinces" a transaction involving commerce. Universal thinks not. The Court thus begins its analysis here.

It is common ground that Congress enacted the FAA in 1925 to counter "[j]udicial hostility to arbitration." CompuCredit Corp. v. Greenwood, ––– U.S. ––––, 132 S.Ct. 665, 668 –––– L.Ed.2d –––– (2012) (citing AT&T Mobility LLC v. Concepcion, 563 U.S. ––––, ––––, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011)). The Act provides, in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has repeatedly stated that courts should interpret this provision liberally, thereby giving effect to the federal policy promoting arbitration agreements. E.g., Concepcion, 563 U.S. at ——, 131 S.Ct. 1740, 1745 (describing the FAA "[a]s 'embod[ying] [a] national policy favoring arbitration,' and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary'") (citations omitted; some alterations in original). Hence, if the arbitration agreement falls under the Act's purview, "[s]tate and federal courts must enforce the [FAA] with respect to all arbitration agreements covered by . . . [it]." Marmet Health Care Center, Inc. v. Brown, 565 U.S. ——, ——, 132 S.Ct. 1201, 1202 (2012) (*per curiam*).

    In Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995), the Supreme Court gave a broad reading to the word "involving" contained in § 2 of the FAA, equating it to the word "affecting." The Court, interpreted § 2 as "[i]nsisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." Id. at 281, 115 S.Ct. 834, 842 (alterations in original). Further, the FAA defines the word commerce as  "commerce among the several States . . . , or in any Territory of the United States . . ., or between any such Territory and another, or between any such Territory and any State . . . ." 9 U.S.C. § . 1.

    In the case at hand, the parties' commercial relationship, as limned in the Contracts, clearly involved interstate commerce. According to the complaint, Universal is a Puerto Rico corporation while Warrantech is a Delaware corporation with its principal place of business in Texas. Warrantech conducted the mechanical breakdown program's claims management

operations from Puerto Rico and from Texas; payments were thus made across state lines. The foregoing suffices to conclude that this dispute falls under the scope of the FAA; Universal's contentions to the contrary are unavailing. See Allied-Bruce Terminix Companies, Inc., 513 U.S. at 282, 115 S.Ct. 834 (finding that termite-control contract implicated interstate commerce since it affected out-of-state corporation and required out-of-state materials); Combined Energies v. CCI, Inc., 514 F.3d 168, 170 n. 1 (1st Cir. 2008); see also Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co., 643 F.2d 863, 867 (1st Cir. 1981).[4] To say more would be supererogatory.

*FAA preemption*

This action, originally filed in state court pursuant to the PRAA, was removed on diversity grounds by Warrantech. More crucially, the parties agreed to abide and arbitrate by the laws of Puerto Rico. See Docket # 1-1-, p. 27. For the reasons that follow, state law governs the substantive outcome.

FAA coverage, the Supreme Court has intimated, is not tantamount to the preemption of otherwise controlling state arbitration law, particularly where the parties have agreed to arbitrate pursuant to state law. See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In Volt, the Supreme Court made clear that "[t]he FAA contains no express pre-emptive provision

---

[4] Universal seems to imply that the business of handling insurance claims is impervious to Congress' broad reach pursuant to the Commerce Clause. See Docket # 25, p. 7. This is a non-starter: This court recently held that Universal, by providing coverage for its policy holders outside of Puerto Rico, e.g., in the continental United States, engaged in the distribution or acquisition of goods or services in interstate commerce. See Puerto Rico American Ins.Co. v. Burgos, No. 01–1186, --- F.Supp.2d ----, 2011 WL 4526083, at * 8 (D.P.R. Sept. 30, 2011); see also United States v. Lopez, 514 U.S. 549, 558–59 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) ("Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.").

nor does it reflect a congressional intent to occupy the entire field of arbitration." Id. (citation omitted).[5] By like token, the First Circuit has noted that, "[e]ven when federal law *applies* to an arbitration agreement, the Federal Arbitration Act has never been construed to preempt all state law on arbitration. . . ." New England Energy Inc. v. Keystone Shipping Co., 855 F.2d 1, 3 (1st Cir.1988) (footnote omitted; emphasis added). Therefore, we are not dealing with the "[s]o-called field preemption." Kurns v. Railroad Friction Products Corp., 565 U.S. ——, ——, 132 S.Ct. 1261,1263 (2012) (citations and internal quotation marks omitted).

   As relevant here, the FAA preempts a state arbitration statute that runs afoul of federal arbitration policy, such as where state law "[p]rovides lesser protection for arbitration agreements and awards than does federal law." M&L Power Servs., Inc. v. American Networks Int'l, 44 F.Supp.2d 134, 141 (D.R.I. 1999); Thomas Diaz, Inc. v. Colombina, S.A., No. 10–1426, --- F.Supp.2d ----, 2011 WL 6056717, at *2 n. 1 (D.P.R. Dec. 6, 2011)("The Supreme Court has consistently held that the FAA preempts any state statutory prohibitions [that] conflict with the goals and policies of the FAA." (quoting Hawayek v. A.T. Cross Co., 221 F.Supp.2d 254, 256 (D.P.R. 2002))). Conflict preemption comprises the other aspect of the bedrock principle that, under the Supremacy Clause, state law cannot trump federal law; "[i]f it does, it

---

   [5]  To be precise, the Supreme Court held that, where the parties have agreed that their arbitration agreement will be governed by the law of California, the FAA did not preempt the California Arbitration Act because it did not "[u]ndermine the goals and policies of the FAA." 489 U.S. at 477, 109 S.Ct. 1248. Even though the California law, contrary to the FAA, permitted the parties to stay the arbitration, the Court declined to find it preempted, reasoning  that because the partied had "[a]greed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . ." Id. at 479, 109 S.Ct. 1248; Flexible Mfg. Sys. v. Super Prods. Corp., 874 F.Supp. 247, 248-49 (E.D.Wis.1994), judgment aff'd, 86 F.3d 96 (7th Cir. 1996) ("[W]hether the FAA preempts the Wisconsin arbitration statute will depend upon whether the Wisconsin law in some way undermines the purpose of the FAA.").

**Civil No. 11-1613 (SEC)** **Page 10**

must yield." <u>Antilles Cement Corp.</u> v. <u>Fortuño</u>, Nos. 09–1314, 09–1583, --- F.3d ----, 2012 WL

118572, at *9 (1st Cir. Jan. 17, 2012) (citing, *inter alia*, U.S. Const. art. VI, cl. 2; <u>Gibbons</u> v.

<u>Ogden</u>, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824)).[6] Accordingly, the Court turns to the

PRAA provisions to vacate and modify arbitration awards to ascertain whether they (1) provide

less protection than their federal counterpart; and (2) conflict with the goals of the FAA.

The PRAA provides the following grounds for reversing or vacating an arbitration

award:

> (a) When it was obtained through corruption, fraud or other improper means.

> (b) When there was evident bias or corruption on the part of the referees or any of them. . . .

> (c) When the referees are in error in refusing to postpone the hearing after just cause therefor was shown, or in refusing to hear relevant and material evidence on the dispute, or when they commit any other error impairing the rights of any of the parties.

> (d) When the referees go beyond their function or when the award made does not finally and definitively decide the dispute submitted.

> (e) If there was no submission or valid arbitration agreement and the proceedings were initiated without having served the notice of the intent to arbitrate . . . .

P.R. Laws Ann. tit. 32, § 3222. Similarly, the FAA authorizes courts to vacate an arbitration

award in the following cases:

---

[6] "For preemption purposes, the laws of Puerto Rico are the functional equivalent of state laws." <u>Id.</u> at *8 (citing <u>P.R. Dep't of Consumer Affairs</u> v. <u>Isla Petroleum Corp.</u>, 485 U.S. 495, 499, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988)).

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Court notes at the outset that the PRAA's first two grounds constitute a *verbatim* recitation of its federal counterpart. The same holds true for the fourth scenario, compare § 10(a)(4)  with P.R. Laws Ann. tit. 32, § 3222 (d); see also VDE Corporation v. F & R Contractors, 180 P.R. Dec. 21, 46-47 & nn. 6 & 7 (2010) (applying § 10(a)(4) to interpret § 3222 (d)). As to subsection (e), it parallels U.S.C.A. § 9 and is inconsequential to this case. Because the aforementioned grounds for vacating an arbitration award are identical under both statutes, preemption is clearly inapposite.

Subsection (c)—the only ground upon which Universal relies to vacate the Award—presents a more challenging question. Indeed, it seemingly provides a ground not contemplated by the FAA, namely, when  the arbitrators "[c]ommit *any other* error impairing the rights of any of the parties." Id. § 3222 (c) (emphasis added). At first blush, subsection (c) seems to confer lesser protection to arbitration awards, not least because of its expansive

treatment of the word "error." But the Supreme Court of Puerto Rico, based on the PRAA'

legislative history and its interrelation with the FAA, has held otherwise:

> With regard to the parameters of judicial review, we decided that the arbitrator's errors in the weighing of the facts or in the rules governing a right, regardless of the dissident or concurrent feeling of the judicial forum, *are not reviewable on the merits; neither are the assignments of error involving the consideration on the merits of findings of fact regarding the construction of a contract, or the evidence received by the arbitrators, subject to review.*

C.R.U.V. v. Hampton Dev., 12 P.R. Offic. Trans. 76, 112 P.R. Dec. 59, 64 (1982) (citing

Autoridad Sobre Hogares v. Trib. Superior, 82 P.R. Dec. 344, 347-52 (1961) (emphasis added)).

Moreover, the Supreme Court of Puerto Rico declined to interpret subsection (c) as providing

more protection than its federal counterpart, choosing instead to equate its definition to the one

contained in 9 U.S.C. § 10(a)(3). Id.; see also Autoridad Sobre Hogares, 82 P.R. Dec. at 360-61

(finding that the term "error" in § 3222 (c) equals "misbehavior" or "misconduct" as contained

in  § 10(a)(3)).

      This result is unsurprising: Not only is the PRAA modeled after the FAA, but it tracks

it closely as well. See id. Warrantech agrees with the foregoing. See Docket # 28, p. 6. And

Universal likewise observes that "[t]he Puerto Rico Arbitration Act was drafted using the FAA

as a model and . . . [and] [a] large part of its provisions, particularly the key ones, constitute a

translation of the FAA." Docket # 25, p. 9 (citing S.L.G. Mendez Acevedo v. Nieves

Rivera, 179 P.R. Dec. 359 n. 9 (2010) (citing in turn David Helfeld, La Jurisprudencia

Creadora: Factor Determinante en el Desarrollo de Arbitraje en Puerto Rico, 70 Rev.Jur. U.P.R.

1, 20 (2001))); <u>see also</u> <u>Jorge-Colon</u> v. <u>Mandara Spa Puerto Rico,</u> 685 F.Supp.2d 280, 288 (D.P.R. 2010) (discussing similarities between both statutes). Moreover, the positive law of the Commonwealth favors arbitration in much the same fashion as the FAA prescribes a liberal policy favoring arbitration agreements. <u>See</u> <u>C & A, S.E.</u> v. <u>Puerto Rico Solid Waste Management Authority</u>, 369 B.R. 87, 93 (D.P.R. 2007).  The PRAA provisions to vacate an arbitration award, therefore, do not conflict with those of the FAA.

Given that the FAA *and* the PRAA provide for very limited grounds upon which courts can vacate an arbitration award, it cannot be said that the subsection (c) undermines the purpose of its federal counterpart. As noted above, the same principles of limited judicial review are equally safeguarded; preemption is thus not a real issue here. Other courts have reached similar conclusions. <u>E.g.</u>, <u>Flight Systems</u> v. <u>Paul A. Laurence Co.</u>, 715 F. Supp. 1125, 1127 (D.D.C. 1989) (finding no preemption where the parties contracted and agreed to arbitration under Virginia law and that "the applicable Virginia law does not directly conflict with the goals of the FAA."); <u>see also</u> <u>e.g.</u>, <u>Easterling</u> v. <u>Royal Manufactured Housing, LLC</u>, 963 So.2d 399, 402-403 (La.App. 3rd Cir. 2007) ("[T]he issue of federal preemption, or application of the [FAA], as opposed to the Louisiana Binding Arbitration Law . . . is of little consequence.") (citations omitted).

Inasmuch as the grounds upon which Universal relies to vacate the Award do not offend the FAA, the Court turns to the merits of Universal's arguments. It does so, applying Puerto

Rico controlling law as well as case law under the FAA, which, for present purposes, is highly persuasive. See Flexible Mfg. Sys., 874 F.Supp. at 249 (citations omitted).

*Universal's claims for vacating the Award*

Because the principle of "judicial abstention" applies to the PRAA, the Supreme Court of Puerto Rico has repeatedly made clear that, as a general rule, "[t]he award of an arbitrator is final and unappealable, reason why a valid arbitration cannot be litigated in court." J.R.T. v. Otis Elevator Co., 5 P.R. Offic. Trans. 285, 105 P.R. Dec. 195, 199-200 (1976). If the parties condition the award to "conform to law," however, the arbitrator "[c]annot disregard the substantive law . . . ." J.R.T. v. Hato Rey Psychiatric Hosp., 19 P.R. Offic. Trans. 73, 119 P.R. Dec. 62, 68 (1987) (citation omitted).  In such cases, the Puerto Rico Supreme Court has carved out an exception to the general rule: "[A]ny of the parties may resort to the courts to impeach it for fraud, misconduct, lack of due process of law, violation of public policy, lack of jurisdiction, or because the award does not settle all the matters in controversy, . . . and for reviewing its correctness and judicial value." Id. (citations omitted).[7]  Nevertheless, an arbitrator's errors involving the consideration on the merits of facts are not subject to judicial second-guessing. C.R.U.V., 12 P.R. Offic. Trans. 76, 112 P.R. Dec. at 64 (citation omitted).

---

[7] It is unclear if this "conform to law" exception conflicts with Hall Street Assocs. v. Mattel, Inc., 552 U.S. 576, 584, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (holding that the grounds for vacatur or modification of an arbitral award contained in the FAA, are exclusive and may not be expanded by contract). The Court, however, need not resolve this "[d]ifficult and important issue that the courts have only begun to resolve." Kashner Davidson Sec. Corp. v. Mscisz, 601 F.3d 19, 22 (1st Cir. 2010); Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 n. 3 (1st Cir. 2008) As fully explained below, Universal's claims fail regardless of whether this exception or Hall Street apply.

The First Circuit has interpreted the FAA in a very similar fashion, adhering to the oft-quoted rule that "the scope of judicial review of arbitral awards is very narrow." <u>PowerShare, Inc.</u> v. <u>Syntel, Inc.</u>, 597 F.3d 10, 14 (1st Cir. 2010). Actually, it is "among the narrowest known in the law." <u>Maine Cent. R.R. Co.</u> v. <u>Bhd. of Maint. of Way Employees</u>, 873 F.2d 425, 428 (1st Cir.1989). Such deference explains why courts abstain from attending claims of errors of law or of fact by arbitrators. <u>Challenger Caribbean Corp.</u> v. <u>Union General de Trabajadores de Puerto Rico</u>, 903 F.2d 857, 860 (1st Cir. 1990).

Judicial review of arbitration awards, therefore, does not entail an analysis of whether a court agrees with the decision. Rather, it is a question of identifying exceptional circumstances that mandate reversal. <u>Id.</u> Put differently, when the parties have contracted to have disputes settled by arbitration, "it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept." <u>United Paperworkers Int'l Union</u> v. <u>Misco, Inc.</u>, 484 U.S. 29, 37 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

With these legal precepts in mind, Universal's allegations that the Award should be vacated falter under the PRAA and the FAA. Stripped to the core, Universal's argument is that, in calculating the amounts that should have been reimbursed to it for services unperformed by Warrantech, the Panel disregarded the rules provided by the parties, i.e., a stipulation that the Award be rendered with regard to "customs and usage" of the insurance industry. Docket # 13, p. 25. For the reasons set forth below, such claims do not withstand scrutiny under the stringent ground provided by subsection (c) of the PRAA.

To begin, even assuming that the Panel's obligation to render the award with regard to the customs and usage of the insurance industry equates to "conforming with the substantive law," the Court is foreclosed from substituting the Panel's reasoning as to what the custom and the usage of the insurance industry was. The Court it simply precluded from delving into the merits of such factual determinations. C.R.U.V., 12 P.R. Offic. Trans. 76, 112 P.R. Dec. at 64; cf. National Cas. Co. v. First State Ins. Group, 430 F.3d 492, 496 (1st Cir. 2005) ("[A]rbitral awards are nearly impervious to judicial oversight.") (citations and internal quotation marks omitted); San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Limited, 293 F.2d 796, 802 (9th Cir. 1961) (finding that section § 10 of the FAA does not authorize courts to set aside arbitration award on grounds of erroneous findings of fact or of misinterpretation of law). Entertaining Universal's claims will undoubtedly require the Court to evaluate the merits of the case and relitigate a controversy already resolved by the Panel.

Indeed, the Panel already rejected Universal's contention:

> [t]he amount of the prepaid fees to Warrantech for the unperformed services is equal to the unearned premium, attributable to Warrantech's fees, that Universal would have returned to customers if all of them had cancelled their policies and contracts prior to their expiration, as of the date of the termination of the Administrative Agreement.

Docket # 1-1, p. 49. Here, Universal agreed to abide by the Panel's view of the facts and the law. Now that Universal dislikes the end result of its bargain, it moves this court to impose on the Panel a particular view of the facts and the law merely because it disagrees with its ruling.

See C.R.U.V., 12 P.R. Offic. Trans. 76, 112 P.R. Dec. at 64. The Court refuses to countenance this kind of second-guessing.

Importantly, the Panel dedicated over five pages of sound analysis on the parties' divergent contentions as to the Award's tabulation. It simply is implausible to maintain that the Panel "[commit[ted] any other [misbehavior or misconduct] impairing the rights of any of the parties." P.R. Laws Ann. tit. 32, § 3222(c); see also Autoridad Sobre Hogares, 82 P.R. Dec. at 360-61.

While Puerto Rico case law on this area is scant, federal courts interpreting the FAA counterpart of subsection (c), have discarded Universal's proffer, limiting a court's intervention to certain instances of misconduct or misbehavior, such as when the arbitrations refuse to hear certain evidence. E.g., National Cas. Co. v. First State Ins. Group, 430 F.3d 492, 497 (1st Cir. 2005) ("[U]nder section 10(a)(3), '[v]acatur is appropriate only when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'"); (citation omitted). *Merely* averring that the Panel—by allegedly ignoring the customs and usage of the insurance industry—ran afoul of Puerto Rico law, Universal falls short of meeting its burden under this ground. Universal concedes that this determination constitutes a factual issue, not a legal conclusion. Docket # 25, p. 14. But, absent extraordinary circumstances, judicial intervention with the Panel's factual determinations is unwarranted. Cf. Local Union No. 251 v. Narragansett Imp. Co., 503 F.2d 309, 312 (1st Cir. 1974) ("The burden is on the party challenging the arbitral award to establish substantially more than an erroneous

conclusion of law or fact."); C.R.U.V., 12 P.R. Offic. Trans. 76, 112 P.R Dec.at 64 (citation

omitted). Well-settled law establishes that, "[e]ven if the court is convinced that the arbitrator

committed serious error, 'so long as the arbitrator is even arguably construing or applying the

contract and acting within the scope of his authority, arbitration awards must be confirmed.'"

Colon Vazquez v. El San Juan Hotel & Casino, 483 F.Supp.2d 147, 152-153 (D.P.R. 2007)

(citations omitted)).

     In light of Puerto Rico's policy favoring arbitration, the concomitant principle of judicial

abstention, and the narrowness with which courts must interpret Universal's implausible proffer,

the Court finds no valid grounds for vacating the Award. All in all, Universal  (1) agreed to

submit its claims to arbitration; (2) had the opportunity to select an arbitrator with purported

experience in the customs and usage of the insurance industry; and (3) was provided with ample

opportunity to conduct discovery and argue its case.

     Ultimately, the Panel reached its own factual and legal conclusions, rejecting some of

Universal and Warrantech's contentions, while adopting others. See Docket #1-1, pp. 47-52.

While its unconformity with the Panel's interpretation of the facts and the law is understandable,

Universal has no choice but to abide by the Award. Because Universal fails to allege a plausible

ground under P.R. Laws Ann. tit. 32, § 3222(c) and 9 U.S.C. § 10(a)(3), its cause of action

requesting the Award's invalidation fails as a matter of law. Hence, its first cause of action is

hereby dismissed.

**Civil No. 11-1613 (SEC)** **Page 19**

*Universal's claims for modifying the Award*

As for the modification of the Award, Universal's second line of attack, the Court turns to the grounds provided by the PRAA:

> (a) When there was evident error of calculation as to the number, or evident error in the description of any person, thing, or property.
>
> (b) When the referees have made a determination on a matter not submitted to them.
>
> (c) When the award is imperfect as to form, without affecting the merits of the dispute.

P.R. Laws Ann. tit. 32, § 3223.[8]

Arguing that the Panel committed a computational error when rendering the Award, Universal focuses on the first ground. Docket # 1-2 ¶¶ 103-114. Specifically, Universal posits

---

[8] The FAA contains the following grounds authorizing courts to issue an order modifying or correcting an award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. A perfunctory review of the foregoing suffices to conclude that the grounds to modify an arbitration award, as provided by both statutes, are almost identical.(Except perhaps for ground (b), which is inapplicable here.) A discussion on preemption is thus unnecessary.

that this court should "[r]ecalculate a mathematical figure used in awarding damages to Universal." Docket # 25, p. 16. According to Universal's contentions, the Panel "[u]sed the mathematical figure that was incorrect, and thus, incurred in an error of calculation." Id. (citation omitted).

Universal, however, complains not about mechanical computational errors; rather, Universal's second cause of action takes exception to the evidence relied upon by the Panel to reach the figure of $30 per contract. See Docket # 1-2 ¶¶ 107-108. Its third cause of action similarly alleges that some of the cancelled contracts were apparently included in the Award. Id., ¶¶ 111-114. So viewed, Universal assails the factual and legal conclusions that led to the figure reached by the Panel. A careful review of the well-reasoned Award leads this Court to find no mathematically inaccurate computations therein. In fact, in denying Universal's motion to modify the award, the Panel framed Universal's protestations as disagreeing with the multiplier the Panel used to calculate the Award, emphasizing that it made no computational error; "[i]t simply used a *different* multiplier, based on the available evidence." Docket # 10-4, p. 2 (emphasis added). The Court declines to second-guess the Panel's wisdom behind the rejection of Universal's failed arguments.

Warrantech correctly alleges that Universal's arguments on this front constitute "[t]hinly-disguised attempts to have this [court] delve into and redecide the merits of the Award . . . ." Docket # 10, p. 18. And, given that the alleged miscalculation is imperceptible on the face of the Award, Universal's contentions do not carry the day. At any rate, the Court is precluded

from modifying an arbitration award on the grounds espoused by Universal. Cf. Kenneth H. Hughes, Inc. v. Aloha Tower Development, Corp., 654 F.Supp.2d 1142, 1152-53 (D.Hawai'i. 2009) (finding that arbitrator made no material miscalculation as to the damages calculation when it merely disagreed with some of the estimates advocated by a party). See also 2 Domke on Commercial Arbitration § 40:4 (3rd ed. 2011). Since Universal's second and third causes of action fail to state a plausible claim under the standards provided by the PRAA and the FAA, they also fail as a matter of law.

**Conclusion**

The time has come to provide finality to this seven-year old, protracted commercial dispute that has included three years of active arbitration before the Panel. Entertaining Universal's challenges to the Award would frustrate both state and federal policy favoring arbitration. The Panel's reasoning, moreover, is neither unsound nor unsupported by the record; its findings are founded on a reasonable interpretation of Puerto Rico law and the customs and usage of the insurance industry. It follows that Universal's claims, which essentially seek a third bite at the apple, "fail[] to meet the exceedingly high threshold for judicial interference with arbitral awards." UMass Memorial Medical Center, Inc. v. United Food And Commercial Workers Union, 527 F.3d 1, 7 (1st Cir. 2008). Because Universal's complaint falls outside of the scope of review provided by the PRAA and the FAA, none of its claims sets forth a plausible entitlement to relief.

**Civil No. 11-1613 (SEC)**                                                          **Page 22**

Having denied Universal's claims to vacate or modify the Award, the Court must grant an order confirming it. <u>See</u> P.R. Laws Ann. tit. 32, § 3221; 9 U.S.C. § 9.[9] Consequently, Warrantech's motion to confirm the Award is hereby **GRANTED**. And this case is **dismissed with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of March, 2012.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[9] Courts have held that a motion to dismiss a complaint to vacate or modify an award is functionally equivalent to a motion to confirm an award. <u>See</u> <u>e.g.</u>, <u>General Elec. Co.</u> v. <u>Anson Stamping Co. Inc.</u>, 426 F. Supp. 2d 579, 591-92 (W.D. Ky. 2006).